**IN THE COURT OF APPEALS OF IOWA**

No. 24-1152
Filed October 30, 2024

**IN THE INTEREST OF E.F., L.F., and W.F.,**
**Minor Children,**

**J.H., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Linn County, Cynthia S. Finley,

Judge.


　　　A mother appeals the termination of her parental rights to three children.

**AFFIRMED.**


　　　Alexander S. Momany of Howes Law Firm, PC, Cedar Rapids, for appellant

mother.

　　　Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

　　　Julie G. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and

guardian ad litem for minor children.


　　　Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

A mother appeals the termination of her parental rights to three children: E.F. (born 2013), L.F. (born 2016), and W.F. (born 2017). The father is deceased. After considering the mother's claims about the statutory elements of termination and the permissive parent-child bond exception, and finding her request for additional time unpreserved, we affirm the juvenile court.

**Background facts and proceedings.** This family came to the attention of the Iowa Department of Health and Human Services (HHS) due to the mother's chronic substance-abuse problems in early 2022. Before this, the family had been involved with North Dakota's equivalent child welfare agency. The mother admitted to methamphetamine use inside and outside the home, and HHS founded a child-abuse assessment on that basis. HHS provided voluntary services, but the services did not resolve their concerns.

The children were subsequently adjudicated children in need of assistance after the mother was hospitalized due to methamphetamine use and also reported using cocaine. The children remained in the mother's custody and care, subject to HHS supervision and the mother's compliance with substance-abuse and mental-health recommendations. The mother began but did not successfully complete substance-abuse treatment in late 2022, and by February 2023 she disclosed to HHS that she had been abusing alcohol; related records confirmed she was not attending group meetings relating to sobriety. Around the same time, the mother missed drug tests and started showing signs of relapse. In April and May, the mother twice tested positive for methamphetamine and tried to explain

the positive result with increasingly incredible explanations, such as questioning whether the methamphetamine positive could be due to a hemorrhoid cream.

A safety plan required the maternal grandmother to be present in the home as a sober caretaker, and HHS later placed the children in the grandmother's care after removal from the mother. The mother was required to leave the grandmother's home after the mother tested positive for methamphetamine a third time and one of the children tested positive for exposure. Then the grandmother tested positive for methamphetamine, and the children were placed in foster care. And the grandmother assaulted an HHS case manager when the children were to be moved, for which she pled guilty to criminal assault. The grandmother did not cooperate with further testing after these events, even after the mother resumed living with her.

The mother continued to test positive for methamphetamine in June, and she reengaged (at least to some extent) with treatment. But even while participating in and after completing treatment, she continued to test positive for methamphetamine. And the children's guardian ad litem reported behavioral indicators of use. Despite eighteen methamphetamine-positive test results from late 2022 through June 2024, the mother claimed she had been sober since July 2022.

The mother also struggled with her mental health. At one point, the mother told a provider she had six personalities, three of which she hid from the children. And she expressed that she did not need mental-health services despite acknowledging mental-health problems and diagnoses.

In the lead-up to the termination trial, the mother regularly attended visits, which were all fully supervised since removal. She made the children big promises—like birthday parties at a hotel—and then failed to follow through, which negatively affected the children. HHS had concerns the oldest child was "parentified" as a consequence of the mother's inability to parent. Overall, the record indicates the children were adoptable and doing reasonably well in foster care.

The county attorney, HHS, the family support worker, and the children's guardian ad litem all recommend termination of parental rights. The mother was present for the termination trial but did not testify. The juvenile court terminated the mother's parental rights to all three children under Iowa Code section 232.116(1)(f) (2024). She appeals, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**The statutory elements.** The mother first challenges whether the State met its burden to terminate her parental rights under Iowa Code section 232.116(1)(f). We understand her briefing to only contest the fourth element—whether the children could be returned to her immediate custody. But the mother's own petition on appeal proves this element was met, as she writes:

> A review of the file in its entirety as well as the record at the time of trial in this matter on the State's Petition for Termination of Parent/Child Relationship indicates that while the children cannot be returned to the mother's custody immediately, that the mother has been and is capable of being successful.

While we understand the mother's optimism that she is capable of being successful in the future, the inquiry before the juvenile court was whether she could take immediate custody of the children as of trial—and she concedes she could not.

*See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). This ends the analysis, and we affirm. But we also note that, even without the mother's concession, we would uphold termination of her parental rights for reasons that include—but are not limited to—her longstanding, chronic, and unaddressed substance-abuse problems, as well as her failure to progress past fully supervised visits over the life of the case. *See In re L.H.*, ___ N.W.3d ___, ___, 2024 WL 3887255, at *1 (Iowa 2024) ("[The parent] never progressed beyond fully-supervised visits, which also prevented an immediate return of custody.").

**Additional time.** One sentence of the mother's petition on appeal appears to ask for an additional six months to work toward reunification. This claim does not appear under a separate heading and is not supported by any independent analysis of the facts or law. "[A]s we have held before, 'sprinkled mentions of an issue' are insufficient to raise legal claims for our consideration." *In re K.P.*, No. 23-1661, 2024 WL 260885, at *3 (Iowa Ct. App. Jan. 24, 2024) (citation omitted). And beyond the briefing, the mother failed to preserve error on this claim, as it was not argued by her attorney below, nor did the juvenile court rule on it. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). To the extent it is raised, we do not address this issue any further.

**Bond exception.** The mother's last claim asserts her bond with the children should have precluded termination. *See* Iowa Code § 232.116(3)(c). A parent resisting termination based on this permissive exception has the burden to prove by clear and convincing evidence that severing this bond would be

detrimental to the children. *Id.* And our case law recognizes that—without more—neither a parent's love nor the mere existence of a bond is enough to prevent termination. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). In our review of the record, we generally agree with the HHS worker's assessment:

> I think the children and [the mother] are affectionately bonded. I think there's also an unhealthy bond, and that's due to [the mother] trying to be their friend, involving them in adult conversations, making promises, no follow through. [The mother]'s serious lack of judgment is what's impairing her relationship with her children.

We, like the juvenile court, find the mother failed to carry her burden to prove by clear and convincing evidence that preserving this bond outweighs the children's need for stability in a safe and sober home—something the mother cannot provide for the reasons discussed in this opinion. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting we consider the bond in the context of a case's unique circumstances and the children's best interests). As a result, we affirm the juvenile court's decision to not thwart termination on this basis.

**AFFIRMED.**